# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

UNITED STATES OF AMERICA,  )
                           )
v.                         )     Case No. CR413-050
                           )
ROBERT ANTWAN FRAZIER,     )

## REPORT AND RECOMMENDATION

Indicted as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), doc. 1, Robert Antwan Frazier moves to suppress all of the evidence against him. Docs. 13 & 20. He devotes much of his brief to questioning the reliability of the 911 call that prompted the police to approach him as he walked along a street in a high-crime area of Savannah, Georgia. Doc. 13 at 1-3. He admits, however, that when "one of the dispatched officers exited his car and attempted to [s]top [him], [he] then attempted to flee from the officer. Following a short chase, the defendant was apprehended. [He] was seen by the officers to throw a gun during the chase and that weapon was retrieved by the officers." *Id.* at 3. Frazier contends that because the 911 call was from an anonymous tipster of unknown reliability, the police had no constitutional basis for

stopping him, thus warranting the suppression of all resulting evidence. *Id.* at 5.

Importantly, Frazier does *not* argue that the police violated any right or engaged in any improper conduct by simply approaching and seeking to question him. The 911 call's validity is thus immaterial, because the police are free, for *any* reason, to stop and engage in consensual street encounters and ask questions -- so long as the individual is free to walk away.[1] *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012) (officers' actions in approaching four men in a parking lot and asking them questions was a consensual encounter,

---

[1] For that reason, Frazier's reliance upon *Florida v. J.L.*, 529 U.S. 266 (2000), which dealt with the lawfulness of reasonable-suspicion seizures based solely on anonymous tips, is misplaced. Even if the anonymous tip in this case furnished an insufficient basis for a seizure -- and the Court assumes this to be the case -- the undisputed facts establish that no seizure occurred at the moment the police first approached Frazier and asked to speak with him. *See Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion) (officers do not violate the Fourth Amendment merely by approaching an individual on the street . . . [and] by asking him if he is willing to answer some questions . . . ."). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual . . . as long as [they] do not convey a message that compliance with their requests is required." *Florida v. Bostick*, 901 U.S. 429, 434-35 (1991). Frazier has not alleged that the officers commanded him to stop; indeed, he stipulated at the suppression hearing to the accuracy of the government's assertion that he fled at the moment the officers "asked" to speak with him. Further, even if the officers had conveyed the impression that Frazier had no choice but to speak with them, Frazier admits that he did not submit to any such demand but instead immediately fled from the officers. In such cases, no Fourth Amendment seizure occurs until the police actually catch up with and lay hands on the fleeing suspect. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). As noted below, by that point in this case, the police had ample suspicion to justify their seizure of Mr. Frazier.

2

which did not implicate the Fourth Amendment at all). Frazier does not claim that he did not feel free to walk away; rather, he simply ran when the police approached him.

Nor does Frazier dispute that if the individual in such an encounter does something to raise a reasonable suspicion, then the police are entitled to detain him for investigative purposes. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 21-23 (1968); *Lewis*, 674 F.3d at 1303. In fact Frazier, who has otherwise failed to comply with L. Cr. R. 12.1, *admits* to facts showing that he fled from officers who sought to speak with him, *see* doc. 22-1 at 2 (Police Report), and was observed by the officers to have "abandoned a gun behind a church before being caught." *Id.* These observations obviously supplied ample reasonable suspicion to detain him for further investigation.

It is true that "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). But in appropriate circumstances flight "can supply the 'key ingredient justifying the decision of a law enforcement officer to take action' . . . . 'Flight invites pursuit and colors

3

conduct' that might otherwise appear innocent." *United States v. Herzbrun*, 723 F.2d 773, 778 (11th Cir. 1984) (cites omitted), *quoted in United States v. Burston*, 2013 WL 787909 at * 7 (N.D. Ga. Jan. 4, 2013). Indeed, a defendant's "efforts to flee, coupled with [a law enforcement officer's] reasonable suspicion that [the defendant] was involved in criminal activities, establishes *probable cause*" to arrest him." *United States v. Smith*, 481 F. App'x 540, 544 (11th Cir. 2012) (emphasis added) (*quoting United States v. Dotson*, 49 F.3d 227, 231 (6th Cir. 1995)).

If an unprovoked flight from officers in an area of heavy narcotics trafficking supported reasonable suspicion that William Wardlow was involved in criminal activity, *Wardlow*, 528 U.S. at 125, then Frazier's headlong flight in a high-crime area, and then ditching a gun in the process, supplied ample suspicion here. The police violated no Fourth Amendment right in stopping him, and he does not contest the aftermath, which ripened into probable cause to support his warrantless arrest. Frazier's motion to suppress therefore should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this 28th day of May, 2013.

*[signature]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

4